UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ISAAC WILSON,

    Petitioner,

v.                                       Case No. 4:21cv17-AW-HTC

RICKY D. DIXON,[1]

    Respondent.

_____/

## ORDER AND REPORT AND RECOMMENDATION

    Petitioner, Isaac Wilson, through counsel, filed a petition under 28 U.S.C. § 2254 raising one claim of ineffective assistance of trial counsel ("IATC") for failing to properly object to the manner in which the state charged him with attempted felony murder. ECF Doc. 1. After considering the petition, the record, the State's response, ECF Doc. 11, and Petitioner's reply, ECF Doc. 15, the undersigned recommends the petition be DENIED without an evidentiary hearing.

---

[1] Ricky D. Dixon succeeded Mark S. Inch as Secretary of the Florida Department of Corrections and is automatically substituted as the respondent. *See* Fed. R. Civ. P. 25(d). The clerk is directed to update the case file information to reflect Ricky D. Dixon as the Respondent.

I.  BACKGROUND

On the morning of January 10, 2008, a male of Petitioner's race, age and build robbed a Subway restaurant with a gun, wearing a plain white hoodie zipped all the way up so the manager could not see his face. ECF Doc. 11-2 at 58-59 & 73. While the perpetrator was behind the counter, forcing the manager at gunpoint to open the safe, a homeless man came into the store and refused to lie on the ground when ordered to by the perpetrator. *Id.* at 63. As the homeless man attempted to run out of the store, the perpetrator shot at him, hitting him in the calf. *Id.* at 64 & 95.

After forcing the manager to empty out the safe, the perpetrator took the manager's purse, which contained her cellphone. *Id.* at 64-65. Detectives tracked the phone all the way to a garbage can at the end of a residential driveway and found the manager's purse and phone inside, along with the envelopes that held the money taken from the Subway safe. *Id.* at 118-19 & 153-54. The residence belonged to Danasha Wilson, Petitioner's sister. *Id.* at 126.

Officers obtained her consent to search the house and found a plain white hoodie on the couch within view of the doorway. *Id.* at 132. Also, they found a 9mm semiautomatic firearm with a magazine in it on an entertainment center right next to the front door and within six feet of the hoodie. *Id.* at 133-34. Also, a pair of shoes were found with tread that was consistent with a shoeprint on the Subway restaurant countertop, but neither of which could be definitively matched as the exact shoe that made the shoeprint. *Id.* at 135 & 201.

Case No. 4:21cv17-AW-HTC

While officers were at the home, Petitioner spoke with his sister on her cellphone and promised to come to the home to talk with law enforcement, but he never showed up. *Id.* at 155-56 & 223-34. Later, on April 14, 2008, he was arrested after fleeing law enforcement in a high-speed chase. ECF Doc. 11-1 at 28. While he denied all involvement in the Subway case, he was convicted of the fleeing and was incarcerated until May of 2012, during which time the Subway robbery and shooting case languished for five years as an open case.

Eventually, in 2013, an FDLE investigator re-examined the case as part of a review of open cases. ECF Doc. 11-2 at 252. The investigator realized that a firearms expert had examined the bullet that hit the homeless man and determined it was fired from the gun that was found at Petitioner's sister's house, *id.* at 184, but that the test results had never been returned to investigators. *Id.* at 252-53. Also, he noticed that a DNA profile had been found on the hoodie, but it had not yet been compared to the Petitioner. *Id.* Therefore, the investigator obtained a buccal swab of Petitioner which a DNA expert compared to the DNA on the hoodie. *Id.* at 324-26. As the expert later testified at trial, the DNA on the hoodie was 100 quadrillion times more likely to have come from Petitioner than from any other individual. *Id.*

As discussed more fully below, Petitioner was originally charged in October 2013 with a single count of attempted first degree murder. In October 2014, the State attempted to add a second count for attempted felony murder with armed robbery or burglary as the predicate, and the defense filed a motion to dismiss that

Case No. 4:21cv17-AW-HTC

second count based on the statute of limitations. The circuit court denied the motion and allowed the State to file a third amended information. ECF Doc. 11-3 at 222 (transcript of motion to dismiss hearing on June 19, 2015). On June 29, 2015, the State filed a third amended information, charging Petitioner with one count of attempted first-degree murder involving a firearm (a capital felony due to the weapon enhancement) and one count of attempted felony murder involving a robbery and/or burglary, while Petitioner possessed, carried or discharged a weapon (also a capital felony due to the weapon enhancement). ECF Doc. 11-1 at 24.

A jury acquitted Petitioner of the attempted first-degree murder charge but convicted him on the attempted felony murder charge. ECF Doc. 11-1 at 109. He was sentenced to life in prison. *Id.* at 116.

## II.   PROCEDURAL HISTORY & TIMELINESS

Under the Antiterrorism and Effective Death Penalty Act Of 1996 ("AEDPA"), 28 U.S.C. § 2244, et seq., as amended, a federal habeas petition must be filed within one year of certain trigger dates. For the purposes of this petition, the pertinent trigger date is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Additionally, the one-year time period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). As discussed below, the petition is timely.

Petitioner appealed his judgment and sentence to the First District Court of Appeals ("First DCA"), which affirmed in 1D15-3492 *per curiam* without a written opinion on June 15, 2016, ECF Doc. 11-3 at 78, and denied rehearing on August 5, 2016. *Id.* at 88. Petitioner did not seek review in the Supreme Courts of Florida or the United States. ECF Doc. 1 at 2. Thus, the conviction became final ninety (90) days later, or on November 3, 2016. *See Bond v. Moore*, 309 F.3d 770, 773–74 (11th Cir. 2002) (holding a state prisoner's conviction becomes final when the U.S. Supreme Court denies certiorari, issues a decision on the merits, or when the 90-day period to file a petition for certiorari expires).

The AEDPA clock began running on November 4, 2016 and ran for eighteen (18) days until November 22, 2016, when Petitioner filed a post-conviction motion under Florida Rule of Criminal Procedure 3.850, ECF Doc. 11-3 at 125, which the court dismissed on November 30, 2016. *Id.* at 145. Petitioner did not appeal the dismissal, so the AEDPA deadline remained tolled until thirty (30) days later, December 30, 2016, when the time for appealing expired. The AEDPA clock began running on December 31, 2016, and ran for 262 days (for a running total of 280 days) until Petitioner, through counsel, filed a third 3.850 motion on September 19, 2017. *Id.* at 154. That motion was continuously pending until May 21, 2019, when the First DCA issued its mandate affirming the denial of the motion.

The AEDPA clock began running the next day and ran for thirty (30) days (for a running total of 310 days) until the Petitioner filed a *pro se* Motion to Correct

Case No. 4:21cv17-AW-HTC

Illegal Sentence under 3.800 on June 21, 2019. ECF Doc. 11-3 at 354. The 3.800 motion was continuously pending until January 6, 2021. ECF Doc. 11-3 at 416. The federal petition was filed by counsel five days later, on January 11, 2021, ECF Doc. 1; thus, the petition is timely, and the Respondent does not argue otherwise.

## III. DISCUSSION

Petitioner argues in his single ground for relief that counsel was ineffective for failing to properly object or "preserve" an objection to the State avoiding the four-year statute of limitations by using a firearm to enhance the attempted felony murder charge to a life felony charge. There is no dispute Petitioner exhausted this claim.

In fact, it was one of the claims Petitioner raised in his post-conviction 3.850 motion. The circuit court, however, denied relief on two grounds. First, contrary to Petitioner's argument, trial counsel "filed a motion to dismiss raising the exact issue for which Defendant now claims that his trial counsel was ineffective." Second, reclassification was not prohibited because Defendant was charged with attempted felony murder with simple robbery as the underlying felony and the use of a firearm is not an essential element of simple robbery. ECF Doc. 11-3 at 220. Because the First DCA issued a *per curiam* affirmance of this denial, this Court will "look through" that decision to the circuit court's order and presume that the unexplained decision adopted the same reasoning. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The circuit court's rejection of this claim was not contrary to, and did not

involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d).

Under the version of Fla. Stat. § 775.15 in effect at the time of Petitioner's charge, a prosecution for a felony of the first degree had to be commenced within four (4) years after it was committed, while a prosecution for a capital felony, a life felony, or a felony that resulted in a death can be commenced at any time. For example, premeditated murder or felony murder in the course of a robbery or burglary are capital felonies, *see* Fla. Stat. 782.04(1)(a), and can be charged any time. Fla. Stat. § 775.15(1). However, *attempts* to commit premeditated murder or to commit felony murder are classified as first-degree felonies, Fla. Stat. § 777.04(4)(b), subject to the 4-year statute of limitations, § 775.15(2)(a), *unless* a firearm enhancement is applied. Also, under Florida law, a first-degree felony may be reclassified as a life felony "whenever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element." Fla. Stat. § 775.087(1)(a).

As stated above, Petitioner was originally charged on October 18, 2013, with one count of attempted first degree murder involving a firearm, a capital felony not subject to any statute of limitation.[2] ECF Doc. 11-1 at 21. On October 6, 2014, the

---

[2] Defense counsel filed a motion *in limine* as to this information to preclude evidence of the uncharged robbery based on the statute of limitations. ECF Doc. 11-1 at 38-39.

Case No. 4:21cv17-AW-HTC

State amended the information to add a count of attempted felony murder,[3] charging that Petitioner committed a felony – robbery or burglary – and in the course of that felony committed an intentional act that could have, but did not, cause the death of the homeless man, and also that, in the course of committing that felony, used and discharged a firearm. *Id.* at 22. In other words, the charged crime was attempted felony murder, a first-degree felony rather than life felony, and the predicate crime was robbery or burglary enhanced by involvement of a firearm, which was also a first-degree felony. Fla. Stat. 812.13(2)(b) ("If in the course of committing the robbery the offender carried a weapon, then the robbery is a felony of the first degree"). Thus, the charge in Count II was subject to a four-year statute of limitations.

On October 29, 2014, the State filed a Second Amended Information in which the State tried to change the attempted felony murder count to charge simple robbery or burglary as the predicate offense (rather than *armed* robbery or burglary which would have had involvement a firearm as an essential element) and to enhance the overall charge – attempted felony murder charge – with the firearm. ECF Doc. 11-1 at 23. On June 18, 2015, defense counsel filed a Motion to Dismiss Count Two

---

[3] Fla. Stat. § 782.051(1) sets out the crime of "Attempted Felony Murder" as follows: "Any person who perpetrates or attempts to perpetrate any felony enumerated in s. 782.04(3) and who commits, aids, or abets an intentional act that is not an essential element of the felony and that could, but does not, cause the death of another commits a felony of the first degree." Robbery and Burglary are enumerated in 782.04(3).

Case No. 4:21cv17-AW-HTC

and a Renewed Motion *in Limine* Regarding Uncharged Robbery and Related Evidence. Counsel argued Petitioner could not be charged with attempted felony murder with a firearm because the statute of limitations had expired and the offense could not be reclassified as life felony because the use of a firearm was essential to the underlying felony charges of robbery/burglary. These are the same arguments Petitioner makes here.

The court held a hearing, ECF Doc. 11-3 at 222 (transcript of June 19, 2015, hearing), during which defense counsel explained to the judge that Count II should be dismissed because the only way to make Count II a capital or life felony is to enhance it with a firearm. However, the State cannot do that here because the use of a firearm is an essential element of the underlying felony i.e., the robbery/burglary. The State explained, however, that although a firearm was used in the robbery/burglary, the use of the firearm is not an essential element of a robbery/burglary charge. After hearing the State's explanation, defense counsel pointed out that the problem with Count II is that, as pled in the second amended information, the use of the firearm was linked with the robbery, rather than the felony murder. ECF Doc. 11-3 at 241-47. Upon hearing this explanation, the State and the court agreed that the charge could be interpreted in the way that defense counsel did, and, thus, the State offered to amend the information to clarify to which felony i.e., the felony murder or the burglary, the firearm applied. *Id*. at 244-45. Defense counsel agreed the State's proffered amendment would resolve the statute of

limitations problem. However, defense counsel also made clear "I would not abandon my argument because I think the reality is the [evidence] is going to be the state – that the jury is going to hear is that there was a firearm used during the course of the robbery. . . . I'm an advocate for Mr. Wilson. I'm not going to waive that argument because I do think this is the appropriate one to raise, even if the information is amended." *Id.* at 245-46.

On June 29, 2015, the State filed a Third Amended Information on June 29, 2015, making clear the firearm enhancement was being applied to the attempted felony murder charge, rather than the predicate robbery or burglary charge. ECF Doc. 11-1 at 24.

Despite counsel's fervent arguments at the motion to dismiss hearing, Petitioner claims counsel was ineffective for failing to argue (1) the firearm could not be used to prove both the "with violence" requirement for robbery and the "intentional act" required for attempted felony murder; and (2) the firearm could not be used to reclassify the attempted felony murder charge because Florida law only permits the reclassification if the felony is not "a felony in which the use of a weapon or firearm is an essential element." In his Reply, Petitioner also takes issue with counsel's agreement during the motion to dismiss hearing that the statute of limitations defect could be cured with the third amended information and contends by making that statement counsel failed to preserve the argument on appeal.

An IATC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential.  *Id.* at 689.  Petitioner bears the burden of proving counsel's performance was unreasonable under prevailing professional norms and the challenged action was not sound strategy.  *Id.* at 688-89.

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693.  Petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Bare allegations the Petitioner was prejudiced by counsel's performance are not enough.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

The circuit court did not err in determining Petitioner had not met either *Strickland* prong.  Counsel was not deficient because, as stated above, he did, in fact, file a motion to dismiss raising the very arguments Petitioner now makes.  Counsel also re-raised this argument on the eve of trial, reminding the court that he had filed

Case No. 4:21cv17-AW-HTC

the motion to dismiss and stating, "just for purposes of preserving appeal for Mr. Wilson . . . . I'm not waving that for purposes of appeal." ECF Doc. 11-2 at 22. Thus, the circuit court was not unreasonable in concluding counsel had, in fact, persisted in raising the issue he now says he should have raised. Also, Petitioner's argument in the Reply that counsel did not preserve the issue for appeal is without merit. There is no indication the First DCA affirmed the decision for failure to preserve and counsel specifically said he was not waiving the argument.

Regardless, Petitioner cannot show he was prejudiced because the issue of whether the attempted felony murder could be reclassified was addressed and rejected on the merits by the state courts, and this Court should not second-guess the state court's interpretation of state law. The issue of reclassification was raised on direct appeal, ECF Doc. 11-3 at 66, 73, in a 3.800 motion, ECF Doc. 11-3 at 356, and in a 3.850 motion, and rejected at each turn.

Not only did the circuit court and First DCA reject this argument in Petitioner's case, but, also, during the pendency of the appeal, the First DCA rejected in writing an identical argument in *McCray v. State*, 265 So. 3d 659 (Fla. 1st DCA 2019). In *McCray*, the court stated that "No shooting (or attempted shooting) is necessary for the crime of robbery. All the State must show is a taking through 'use of force, violence, assault, or putting in fear." *Id.* at 661. Thus, *McCray* makes clear, as the State argued at the motion to dismiss hearing, that the use of a firearm is *not* an essential element of the robbery claim. As the State argued, although the facts of

Case No. 4:21cv17-AW-HTC

the case show a firearm was used by Petitioner, it is up to the State how it wants to charge the offense and how it wants to present the evidence.

It is a "fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir.1997). When a petitioner claims counsel was ineffective for failing to raise a certain argument that had already been rejected by the State courts, the federal habeas court should decline to second-guess the state courts' interpretation of their own law. *Herring v. Secretary, Department of Corrections,* 397 F.3d 1338 (11th Cir. 2005) (rejecting ineffectiveness claim because "[t]he Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done."); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("Callahan's argument that the state court unreasonably applied *Strickland* obviously depends upon our determining [counsel's] performance was deficient, but first we would have to conclude the state court misinterpreted state law . . . Even if [counsel] was ineffective for failing to make the objection, the state court has told us that, if he did make the objection, it would not have been successful. Callahan cannot be prejudiced by his counsel's failure to make a losing objection.").

Here, the state circuit court and the First DCA rejected Petitioner's interpretation of state law, and this Court would have to conclude that the First DCA misinterpreted state law for Petitioner to have been prejudiced by counsel's actions.

Case No. 4:21cv17-AW-HTC

Therefore, Petitioner has not shown he meets either prong of *Strickland* or that he is entitled to habeas relief.

## IV.  CONCLUSION

### A.  Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See id.*

### B.  Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

1. The clerk is directed to substitute Ricky D. Dixon as Respondent.

Additionally, it is respectfully RECOMMENDED:

1. That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Wilson*, 2013-CF-3120, in Leon County, Florida, ECF Doc. 1, be DENIED without an evidentiary hearing.

2. That a certificate of appealability be DENIED.

3. That the clerk be directed to close the file.

At Pensacola, Florida, this 3rd day of February, 2023.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.

Case No. 4:21cv17-AW-HTC